UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          :
                                  :
   -v.-                           :    S4 05 Cr. 1067 (KMK)
                                  :
ROBERTO MONTGOMERY,               :    AFFIRMATION
NARESH PITAMBAR,                  :    OF E. DANYA PERRY
STEVEN RIDDICK, and               :
NATHANIEL ALEXANDER,              :
                                  :
            Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STATE OF NEW YORK            )
COUNTY OF NEW YORK           : ss.:
SOUTHERN DISTRICT OF NEW YORK)

       E. Danya Perry, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

       1.    I am an Assistant United States Attorney in the Office of Michael J. Garcia, United States Attorney for the Southern District of New York. I submit this affirmation in response to the supplemental Rule 29 and Rule 33 motions filed by defendants Naresh Pitambar ("Pitambar"), Roberto Montgomery ("R. Montgomery"), and Steven Riddick ("Riddick"), and joined by defendant Nathaniel Alexander ("Alexander"). Because this Affidavit is being submitted for the limited purpose of responding to these motions, I have not set forth each and every fact learned during the course of the investigation or in the prosecution of this and related criminal cases.

       2.    In or about June 2005, I was assigned to the investigation of Douglas Shyne ("Shyne"), Natasha Singh ("Singh"), and others. Shyne and Singh were originally charged in a Complaint, dated August 5, 2005, and arrested on August 11, 2005, and August 10, 2005,

respectively. Shyne, Singh, and others were subsequently indicted on October 12, 2005. The grand jury superseded the underlying indictment on November 9, 2005, adding R. Montgomery as a defendant. Following the return of the Shyne indictments, the Government's investigation expanded to include, among other individuals, Riddick and Alexander, who were both indicted in a superseding indictment on February 8, 2006, and arrested on the following day. The fourth superseding indictment in the Shyne case was filed on April 26, 2006. On July 11, 2006, in order to accommodate the schedules of certain of the defense attorneys involved in the Shyne case, the Court scheduled trial for April 2, 2007. By motion dated August 18, 2006, Riddick, Alexander, and co-defendant Timothy Montgomery filed a severance motion on the grounds of, inter alia, the delay between the time of indictment and the time of trial. The Court denied that motion at a status conference held on September 19, 2006.

       3.       As the Shyne case progressed, the Government's investigation into the fraudulent check scheme continued. Due to the progression of that case, the approaching trial date, and counsels' objections to any further delays, charges against other individuals involved in the scheme were filed under separate indictment. Specifically, on September 20, 2006, a grand jury returned two additional indictments: United States v. Bartee, et al., 06 Cr. 832 (the "Bartee Indictment" or the "Bartee case"), and United States v. Marion Smith-Ayres, a/k/a "Marion Smith," a/k/a "Marion Ayres," Indictment 06 Cr. 831 (the "Smith-Ayres Indictment or the "Smith-Ayres case"). Both of these indictments generally described the check fraud scheme orchestrated by Shyne and Singh. All defendants in both the Bartee and Smith-Ayres cases were arrested on or about September 21, 2006.

4. My daughter was born on September 22, 2006. Accordingly, starting after the return of the Bartee Indictment and the Smith-Ayres Indictment on September 20, 2006, and continuing well into 2007, I had extremely limited, if any, involvement in these two criminal cases, and was unaware of any post-arrest statements made by the defendants in the those cases or documents recovered from those defendants. In my absence, prosecution of the Bartee case – including the production of documents in discovery – was handled by another Assistant United States Attorney, Jonathan Abernethy. However, AUSA Abernethy was not involved in the prosecution of United States v. Riddick, *et al.*, 05 Cr. 1067 (KMK) (the "Riddick case" or the "Riddick trial"), nor did AUSA Abernethy ever meet with Singh or Shyne. Instead, during my absence, AUSA Daniel Levy, my co-counsel in the Riddick trial, handled the Riddick case. Also, AUSA Levy was not involved in the Bartee case, and did not become involved in that case until after the conclusion of the Riddick trial.

5. I returned from maternity leave to the Office in about early March 2007 in order to prepare for the Riddick trial. During the approximately one month of trial preparation that followed, I had only limited involvement in the Bartee case, and did not, for example, review the documents that had been recovered or produced in that case. At AUSA Abernethy's request, however, I participated in two proffer sessions, including a so-called "innocence proffer" of Luvenia Bartee on March 22, 2007. For the first time at this proffer session, I became aware of two fake invoices that had been recovered from Bartee's car at the time of her arrest (the "fake invoices," attached to the accompanying Memorandum of Law as Exhibit H). Those fake invoices were shown to Bartee (and me, for the first time) at the March 22, 2007 proffer. The fake invoices appeared to me to be similar to a fake invoice that Shyne had prepared when Singh

had been arrested in connection with a counterfeit check (admitted at trial as Defense Exhibit SR-R and attached as Exhibit G to Pitambar's Memorandum of Law), and I, therefore, assumed that it was Shyne who had handwritten the two fake invoices. At this time, neither I nor anyone else associated with the prosecution compared side-by-side the two fake invoices shown to Bartee at the March 22, 2007 proffer and the fake invoice introduced at the Riddick trial as SR-R.

6. While preparing for the Riddick trial in March 2007, I did ask Natasha Singh generally about her awareness of the counterfeit checks charged in the Bartee Indictment. Singh responded, in substance, that she had been aware of the counterfeit checks, although she had never seen any of the checks themselves. At that time, Singh stated, in substance, that, based on overheard conversations involving Shyne, Bennett, and others, and on conversations she herself had with Shyne, she understood that a number of counterfeit checks were to be deposited into business accounts maintained by two entities, UR Recovery and Moonlight Productions. I did not discuss with Singh the two fake invoices, which I then assumed had been created by Shyne.

7. The trial of the Riddick case concluded on May 10, 2007. Shortly after that, AUSA Levy and I replaced AUSA Abernethy on the Bartee prosecution.

8. The Bartee trial had been scheduled to commence on February 11, 2008 before the Honorable Naomi Reice Buchwald. However, in June 2007, the case was reassigned to the Honorable Kevin Thomas Duffy and, at a conference held on July 18, 2007, Judge Duffy scheduled trial for September 4, 2007. In response to this acceleration of the trial schedule, the Government began to prepare in earnest for the trial of the Bartee case. Toward that end, on

August 16, 2007, I and other representatives of the government met with Shyne.[1] At this meeting, I showed to Shyne the two fake invoices that I believed he had prepared. Contrary to this belief, however, Shyne stated, in substance, that he believed the handwriting on the fake invoices to be Singh's and that she had prepared them at his direction. Prior to August 16, 2007, none of the Government attorneys or agents involved in the investigation or prosecution of the Riddick case or the Bartee case was aware that Singh had been involved in the preparation of the two fake invoices. Following the August 16, 2007 meeting with Shyne, I and other representatives of the government met with Singh and presented to her, for the first time, the two fake invoices. At this time, she examined them and confirmed that they were in her handwriting and that she recalled having prepared them at Shyne's request. At the Bartee trial, Singh ultimately testified about her preparation, at Shyne's direction, of the two fake invoices, and the contents of the fake invoices.

9. At issue in the Bartee trial were ten separate counterfeit checks. Of these checks two (for $48,000 and $49,000) were not discovered by anyone associated with the prosecution until after the conclusion of the Riddick trial.

10. Singh pled guilty pursuant to a cooperation with the Government. The cooperation agreement provides that:

> This Agreement supersedes any prior understandings, promises, or conditions between this Office and Natasha Singh. No additional understandings, promises,

---

[1] Prior to this time, Shyne had attempted to cooperate with the Government. For various reasons, however, including that he had lied to the Government and failed to reveal his participation in an ongoing check fraud scheme while imprisoned in this case, the Government declined to sign Shyne up to a cooperation agreement. However, Shyne has continued to offer his assistance to the Government, with the expectation that the Court will be informed of his efforts at the time of his sentence and the hope that this will result in a reduced sentence.

or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Other than the proffer agreement entered into between Singh and the Government, there are simply no other agreements that Singh has with the Government.

11.     The sentencing of Singh has not yet been scheduled. At sentencing, the Government will seek a loss calculation under the United States Sentencing Guidelines that encompasses all of the checks referred to in Exhibit B to the accompanying Memorandum of Law.

12.     Following the Bartee trial, Singh was reimbursed for out-of-pocket expenses incurred by her in connection with her preparation for testimony in the Bartee and Riddick trials.

I declare under penalties of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated:  New York, New York
        December 3, 2007

_____
E. Danya Perry
Assistant United States Attorney